Good morning, Your Honors. Matthew Dowd, Fourth Petitioner, Thomas Ward. I presume you're familiar with the record, so I'd like to get to the two main points I'd like to make this morning. Why isn't the Board's comment that you're within the bounds of reasonableness, why isn't that just a finding that the failure to have in the record the prior offenses and referencing that for rehabilitation purposes under the Douglas factors is just harmless error. They're just saying, well, this is reasonable enough that I don't, that we don't view that as reversible error. Are you talking about the testimony that talks about Mr. Ward's prior conduct? Yes, and I'm saying the Board found this within the bounds of reasonableness, talking about penalty and the Douglas factors. Why can't we read that as just saying, we've looked at the problem, and I presume that you're seeing the problem as being the absence in the record of prior offenses and reference of that for rehabilitation purposes. Why aren't they just saying this is harmless error, and we proceed anyway? I think for at least two reasons, Judge Rader. First, it raises a serious due process issue. The whole purpose, as this court pointed out in O'Keefe, is that the agency must specify all of the factual basis for removal in its notice of proposed removal. The Postal Service didn't do that in this case, as you recognize. Now, the Board explicitly overturned the AHA on that. I think they're removing for one purpose, aren't they? They're removing for violating the zero tolerance policy. We're now in a more discretionary area of what the penalty is going to be. Is that different? It is different, because Mr. Ward wasn't given a proper chance to address those accusations. He had a significant problem in terms of trying to figure out what the agency was accusing him of actually doing. If you read through the transcript, which is in the joint appendix, about all of those accusations, it's unclear exactly what happened. But that is suggesting that the accusation is clear, that they're removing him for the zero tolerance policy and threats and so forth. But now we're in what is the penalty for that. I'm asking if the agency has more discretion in that area, and if there's less need to be specific as to what they're considering for rehabilitation. One factor of the Douglas factor. Sure, I agree. I agree that the agency has more discretion and the Board has more discretion in that aspect. But that still doesn't get past the due process problem about not including that information in the notice of proposed removal, so that Mr. Ward could properly address that at the agency stage. My concern goes even maybe a little farther than what you're articulating. I guess the question goes to, following up on Judge Rader's question, the Board here threw out what the AHA did, at least with respect to the deciding official's testimony on prior bad acts. Then, having thrown that out, they said, okay, what do we do now? They decided that we get to whether or not the penalty, based on this purged record, was within the bounds of reasonableness. It seems to me that perhaps the Board, and I want to know if you agree, applied the wrong standard in that regard. When the agency messes up its procedures under the statute, you then evaluate whether it was harmful, whether it shows a harmful error in the application of the agency's procedures. It seems to me, and I want to know whether you agree or disagree, that the Board's application of the standard now, on this revised record, having found there was an error in what the agency did, was to evaluate anew under this test called the bounds of reasonableness. It doesn't strike me that that's the right way to handle it once you've decided that there's been a significant procedural error. I agree with you, Your Honor. We haven't really briefed that the agency hasn't raised it, but it does raise analogies to the harmful error that you see in criminal cases. Sometimes when you see certain testimony come in, even though it's stricken from the record or the jury is instructed not to listen to it or consider it, the information is out there, the cat's out of the bag, and it's almost impossible not to consider this. I think that's the important point of this case. The important point of Mr. Ward's removal is that he, based on the record, the proper record, he was removed for one instance of having a heated discussion with his supervisor. That's what is the record before this Court, and that's what the Board considered. But what happened is that the agency had this, tried to get this information in, and if you look at the government's red brief that they filed, the last page of their red brief, they had this information. And I think that suggests the problem with allowing the agency to do this. Once the cat's out of the bag, you can't forget about it. No, but I'm not sure that that seems to me to be a pretty extreme position. Perhaps a more limited position is that reading the deciding official's testimony here, you come away from the conclusion that these other bad acts were very important to him in deciding to impose the penalty of removal. Judge Dyke, I agree with you 100% because if you look at O'Hara's testimony, and he was the deciding official at the agency, he repeatedly talks about these other acts, and those are the acts that the agency relied on in considering Douglas factors. For example, Mr. O'Hara talked about Mr. Ward's supposed inability to be rehabilitated. Part of the reason he decided that Mr. Ward couldn't be rehabilitated in this case was his knowledge about these supposed bad acts. Well, I think you may be generous in the reading. I think that we can ask the government about this, but I didn't see any basis other on the rehabilitation ground than the fact that he had committed these prior alleged bad acts. That's right, and if you look at Mr. O'Hara's testimony, I think part of his testimony is that he can't be rehabilitated because he violated the zero-tolerance policy. So what's your view of how the board erred? Is it your view that when the board concluded, as it did, that the AJ erred, as did the deciding official in the agency, in considering these prior alleged bad acts, that the standard then applied shouldn't be, okay, and now we're just going to look at it on our own, but they should have said, is this likely to have caused the agency to reach a conclusion different than the one it would have reached in the absence of considering that testimony? Is that the correct standard that should have been applied, that they should have analyzed that? Just first, I think that's right. I think you have to give the board less discretion here because of the procedural error in this case. So what's your view? They would have had to send it back for the ... I mean, it's not even clear to me, frankly, that the agency would have taken the same action, i.e. removal. We've got the conducts off the table. Let's assume, for sake of argument, we're affirming that he did what he was charged. So we're just looking at the severity of the penalty. Is it your view that it's entirely clear that the deciding official would have necessarily come to the same conclusion, i.e. removal versus some lesser penalty in the absence of this? Can we say that from the cold record? Judge Preston, I think if there's one thing you can conclude, it's that the A.J. and the board would not have come to the conclusion that removal is proper. And if you look at all of the cases that the board relies on, and if you look at all the cases that the government relies on in its red brief, you can see that the facts of this case, and when you bring it back to the fact that Mr. Warts was removed for this one heated discussion that lasted maybe a minute or two, and you compare it to a case that was cited by the board, for example, Gaines. This is a board case where an Air Force employee was removed months after the terrorist attacks on 9-11 because he threatened his supervisor and refused to do work. Part of what the board tried to do, and part of what the agency has been trying to do, is say that Mr. Warts' conduct is so serious that it's analogous to these other board cases in which employees have been removed. The only case that the government... That strikes me as being a different point. I don't understand the basis for your argument that the board wouldn't have done the same thing. They said, take the bad acts off the table, we look at it without the bad acts, we still conclude that it's within the range of reasonableness. And I think the question we're asking you is, okay, is that the right standard or should the board have sent it back to the agency, which relied heavily on the bad conduct, to make a new decision, purged of the bad conduct, and to see if it would exercise its discretion to remove him absent the bad stuff? Your Honor, I agree 100% with your latter point where it's our position that the proper thing to have done in this case is to have a new hearing before the A.J. without the testimony about the prior conduct. I don't think that's what I was suggesting. Maybe I misunderstood you. I'm sorry. The question is, since the deciding official testified that he relied so heavily on the bad conduct, doesn't the board under those circumstances, instead of determining whether it would consider a penalty of removal to be reasonable under the circumstances, don't they have to say, okay, the deciding official's original decision was infected by relying on stuff that he couldn't properly rely on? Not only was it infected by that, he said it was important to him. So, we have to ask the deciding official to make a new decision based on the proper record. I think there's precedent in this court that allows the board to mitigate the decision and to reconsider the Douglas factors. I think that is clear. But I think in extreme instances such as this, when you have a deciding official who's relied so heavily on improper evidence, I think the proper thing to do is to send it back to the agency and reconsider. Our complete position is that setting that issue aside, even if you look at the Douglas factors and even if you look at the evidence that the board considered, removal in this case is not proper. It's an extreme penalty. You basically have a 23-year federal employee based on the proper evidence. He hasn't been disciplined before. This is based on the evidence that's properly before this court. This is an example of a heated discussion. If you look at other cases in which the Postal Service has removed employees, nothing comes close. It's your view, right? Are you saying that, just piggybacking on to what Judge Dyke said, that once this is off the table and we know it was heavily relied on improperly by the deciding official, then we're in a position to say, in the absence of that, and to what? You want us to reweigh the Douglas factors? Not to reweigh the Douglas factors, Your Honor. To apply them in the first instance and to say the agency improperly applied the Douglas factors and that infected 70% that we can barely read what the agency did in the absence of that is compelling to finding that something less than a removal is appropriate in this circumstance? Yes, Judge Pearce. I think if you look at the Douglas factors, and I understand that this court does not reweigh Douglas factors, but if you look at this case, not only were some of the Douglas factors just improperly reweighed, but there are certain significant factors that were completely ignored. And this goes, if I may, maybe just one point in terms of the evidence that was clearly before the agent and the board of the penalty imposed upon Mr. Ward's coworker, Mr. Miller. In that instance, and it's undisputed, this involves the same supervisor at the same facility. He was originally removed and his penalty was later mitigated to a suspension of several months for assaulting, physically assaulting, a coworker. You want to say what little time of rebuttal you have? Yes, Judge Rager. Thank you. Mr. Solemson? Good morning, Your Honors. May it please the court. Frankly, neither of those two issues is properly before the court. The appellant never raised the issue of the signing officials having considered the prior acts of Mr. Ward. And I admit that I noted that issue as well, looking as to why wasn't that issue raised by the appellant, and I think it wasn't raised with good reason. And that's because if the court looks to the appendix at page 431 and 432, which is the appellant's pre-hearing submission of the statement of facts and issues, in paragraph 3, the appellant's case in part is that this is the second time that the supervisor in question has, quote, falsely accused the appellant of making threatening remarks. Not only that, but the hearing transcript reveals that on direct exam, his own counsel below at the MSPB hearing elicited testimony about how this is a pattern of the agency in persecuting him, that he's repeatedly been involved in these confrontations, but none of them have been his fault. Okay. Where does that—I guess I'm not following. Because they said that, that—I mean, I guess the issue is I see it, and maybe you're arguing waiver, maybe you're not, but we're looking at the board decision, and the board decision here evaluated, told the AJ, you did wrong, told the deciding official, you did wrong, there was stuff that you shouldn't have considered. And then they said, okay, so we're throwing that out, and the question is, what does the board do then? And my read is the board said, in the light of the fact that we no longer have most of what the deciding official did, we're going to reevaluate this on our own using a standard of whether or not this penalty was within the bounds of reasonableness. What support do you have for the position that that's what the board should do then as opposed to sending it back? Our first answer is that Mr. Ward did not raise that issue either. Mr. Ward not once in either the reply brief or the opening brief challenges the board's approach. All appellant challenges is either the fact of the misconduct, a direct attack on the credibility determination made by the AJ, or the way the board approached the analysis of the Douglas factors. But nowhere—I mean, this is the first time I'm hearing any argument from Mr. Ward that what he's really charging is the board's entire methodology. That being said, I think that this court's opinion in La Chance 147 F3D 1367, and in particular at 1374, counsels the board to do exactly what it did here. And the relevant language from this court was that the proper approach is for the board to consider first whether the agency proved that the petitioner in question engaged in unacceptable and inappropriate behavior, and then to decide whether the particular unacceptable and inappropriate behavior that was proved justifies the penalty imposed by the agency. And that's exactly what the board did. The board said, let's look to— We haven't applied that approach in situations where the deciding official was influenced and in reaching his decision by things he shouldn't have considered. For example, in situations where there are two charges, one's sustained and one's not. If the charge that was not sustained was important to the deciding official's decision as to the penalty, it means to go back to the deciding official in the cases after La Chance to see whether the deciding official would reach the same result. And that's the question here as to whether that same approach should be taken. Respectfully, Your Honor, that is not the issue. That issue was simply not raised at all by Mr. Ward. There is a different question, but let's assume that it was properly raised. Why isn't it correct that where the deciding official says, this was really important to me, the board says it was improper of you to consider that, that it has to go back to the deciding official to reach a new decision, rather than the board saying, well, if he'd reached a different decision in the first place, we could have sustained it. That's a problematic standard, isn't it? Well, Your Honor, had that issue been raised, our argument likely in this case would have been that the AJA's decision to admit the evidence in terms of the rehabilitation wrong was permissible. And not only was it permissible, but the petitioner on direct exam put most of that evidence at issue in trying to show this giant conspiracy by various supervisors against him, that every time he got into a quarrel with them, they charged him with a zero-tolerance policy charge. But the problem I have with that argument is there are no constraints on what the defendant, the employee, can do in these cases, whether he's a petitioner or whatever. But we are specifically charged with reviewing the application of the Douglas factors. What you're suggesting is that, I mean, even the board, in this case, said, no, no, no, you can't do that. There was no argument made that, well, the other guy raised it too, so it was fair game. I don't see where what the employee chooses to argue or not argue has any bearing on whether the deciding official appropriately applied the Douglas factors. And indeed, the board here concluded that he did not. That would go to a, perhaps, I don't know because this was not briefed at all. No, I appreciate that. That might go to harmless error, because what is the problem? No, I don't necessarily disagree with you. I think we are referencing here harmless error. I mean, the statute says that notwithstanding paragraph one, the agency's decision may not be sustained, blah, blah, blah, if the employee or applicant for employment shows harmful error in the application of the agency's procedures in arriving at such a decision. So they showed that there was harmful error. They showed that there was error. The board agreed there was error. The question is, what is the appropriate course once that error is shown and accepted? And why here did the board have the right to say, okay, we're taking all this stuff off the table, and then we're going to sit here and decide, one, we're going to assume the agency still would have fired the employee, and two, we're going to say that if we were the agency, we think there was enough evidence to support it. It's the agency that gets to apply the Douglas factors, not the board, right? In the first instance. But what Lachance teaches is that when there are problems in terms of which charges are sustained and which charges are not, something that is not the case here, then the task of the board is to examine whether the penalty imposed corresponds reasonably to the conduct proved. But here we're talking about the Douglas factors. We're not talking about when the conduct is proved and what the penalty is. We're talking about purely, we're only dealing with the remedy here. We're only dealing with the board review, and the review is really restrained, as is ours, on the agency's use of the Douglas factors. But at least at bottom, we are required on review to look at whether or not the agency properly applied the Douglas factors. And in this instance, clearly they did not, right? I disagree, Your Honor. And in fact- Well, even the board said they didn't properly apply the Douglas factors. They considered evidence and information and allegations that were completely improper. And had that been raised, we would have argued that the judge, the administrative judge, properly admitted them as part of the rehabilitation problem. This is, it's interesting to me that almost none of this was briefed, right? This is all kind of coming at us in a, out of this argument. Yes, Your Honor. I was mostly prepared to discuss today why the Douglas factors that were considered by the board and addressed demonstrate that the penalty imposed was reasonable, and why in fact the charge of improper conduct was sustained, which are the only two arguments Mr. Ward raised. Looking at the board now going back and essentially reviewing the penalty in light of the evidence it does have in front of it, I have kind of a question on that, which also isn't briefed. What does a zero tolerance policy mean? And what the, this court has explained- Zero tolerance of what? The, this court has explained in a case that a petitioner relies on called Cunningham, that zero tolerance means that the removal is per se. That is to say that- Yeah, but of what? Zero tolerance of what? Oh, in this case the zero tolerance policy is against threats, threats of violence, intimidating, bullying, menacing behavior. And so- I have perceived in the past zero tolerance to be linked to violence, and now it seems to be expanding to encompass inappropriate behavior of some kind, and I'm having trouble with that. The whole issue in this case is a red herring, because even petitioner concedes that a zero tolerance policy was not enforced here. A zero tolerance policy would have been enforced here had the deciding official said that in light of the improper conduct charged, Mr. Ward is hereby removed because there's zero tolerance. I'm not looking at the Douglas factors, the Douglas factors have no role, we have zero tolerance, it's out. What he did was, looking at the Douglas factors, he looked towards the seriousness of the conduct in light of the fact that there's a zero tolerance policy against bullying and intimidating and threatening behavior. But he did not enforce a zero tolerance policy. What kind of violence did he threaten? Well it was, in this case it was intimidating- Exactly the position of his supervisor, at most he stood up, right? Stood up, leaned over the desk, yelled, shook some papers, pointed at them. But she felt threatened enough that she called the postal police. She called her supervisor, who testified at the hearing that the supervisor was obviously felt scared and intimidated. And all of that was adopted as a credibility determination by the AJ. And that is virtually unreviewable on appeal. And there is no contradictory evidence to show that, to overturn that credibility determination. But the point is, is that the zero tolerance policy here is really a complete red herring. Because as this court explained in Cunningham, zero tolerance is when the agency simply removes an employee without any consideration of the Douglas factor. Well, your problem with that is that didn't the deciding official rely on what he characterized as the zero tolerance policy? He did, but that is only because the Douglas factors themselves require the deciding official to take into account the seriousness of the conduct. And in terms of assessing the seriousness of the conduct, he considered the fact that the conduct that had been charged violated the zero tolerance policy. But he did not enforce a zero tolerance policy. And so what this court in La Chance teaches is that ultimately what you do is, you don't look at the formality of whether the postal service proved a violation of the employment manual. You look to see whether the penalty imposed is reasonable and commensurate with, or in this case, at this level, whether substantial evidence supports the reasonableness of the penalty imposed in light of the conduct proven. Mr. Solemson, do you get the impression that there's kind of a mounting group of concerns with this case? You know, there's the burden of proof problem, there's the consideration of improper evidence, and now there's this definition of zero tolerance. Is there a mounting group of concerns that perhaps call for reconsideration? No, Your Honor, because at the end of the day, what we have is an ironclad credibility determination finding that Mr. Ward engaged in improper conduct, that the improper conduct occurred as charged, that the supervisor in question, Ms. Bickerstaff, felt threatened and afraid, that she was menaced, and that Mr. Ward was insubordinate, and that in light of those penalty, in light of that conduct, the penalty of removal was within the bound of reasonableness. And it should not be for this court to instruct the agency to re-employ or to re-take back or even potentially to reconsider. What about Mr. Dowd's last point that the guy that slugged somebody wasn't removed? That would be Mr. Miller. It was raised in this case. Again, that is just not what the record reflects. In fact, the agency did select the removal penalty, but an arbitrator on review decided that mitigation was more appropriate in that case. But it's not as if the agency itself was inclined to choose anything other than removal. So even if the agency continuously gets overturned either by us, by the board, or by an arbitrator, they continue to say, well, we can still continue to apply that because that's what we do at least at our level? Your Honor, with respect, I don't think there's enough data to show that the Postal Service is being continually reversed with respect to its selection of a removal penalty. The bottom line is that- Let me ask you, going back to the Douglas factors, what did the board or what do we have left? All of the, one factor is the length of service. We all agree that cuts in his favor. Then we're left with rehabilitation, potential for rehabilitation. All the deciding official said in my read of the transcript was his conclusions about the problems of rehabilitation all stemmed from this conduct, which we now know he wasn't allowed to consider. So I don't see any, at least anything that the deciding official gave us in terms of the possibility of rehabilitation. To the contrary, Your Honor. The deciding official's testimony is at the appendix at 133 to 141, and at page 141 he explicitly testified that he considered it, he considered alternate sanctions and found them to be inappropriate. I believe he also testified that, that- Yeah, but he did consider, but if you, I think a fair reading, you can tell me if I'm wrong about this, but in reading his testimony in its entirety, the reason he considered the alternate sanctions inappropriate was because he thought this was a good chance of this happening again. And the reason he thought there was a good chance of this happening again was because in his own investigation, he had concluded that this was an ongoing pattern. But not only was that issue not raised as a grounds for reversal here, but the evidence that the petitioner put into the record himself demonstrates that that is true. It would be harmless error. The evidence that petitioner put forward is this continuing pattern of supervisors beating up on him for no reason. But of course, where there's smoke, there's fire, and the deciding official found that. And that's exactly our suspicion as to why petitioner doesn't raise that issue. It comes out worse for him if we focus on those issues. Well, I'm not sure- That sounds as though you're saying that the board made a mistake in finding the deciding official couldn't properly rely on this, that the board should have said, oh well, it was admitted at the hearing that this occurred, therefore it was properly relied on. It seems to me you're trying to change the board decision. Not at all, Your Honor. The board's decision stands because they correctly found that the penalty imposed was reasonable in light of the conduct chart. Final thoughts, Mr. Solemson? Your Honor, because these issues were not raised, and because there's no doubt that he committed the charged conduct and that the penalty imposed is reasonable, we request the court confirm. Thank you, Mr. Solemson. Mr. Dowd, you have a minute and a half, a little more. Thank you, Judge Rader. Just two quick points, Your Honor. And with all due respect to my colleague, the Postal Service repeats an error that the A.J. made. Mr. Solemson stood up here and told this panel that Mr. Ward pointed in a threatening manner at Supervisor Bickerstadt. No place in the record will you find any evidence that he gestured at her, and that's part of the problem in this case. Second- Didn't she testify about that? She did, and if you look through the transcript, there's nothing about pointing. The only- I'm sorry. Sorry. She did not testify. There was no testimony on her- That's correct. The first place where the allegation of pointing shows up, it doesn't show up in her police statement, it doesn't show up in the pre-disciplinary investigation report, it doesn't show up in any of the documents, it doesn't show up in her testimony, it shows up in the agency's closing argument. The second point is that if you go and look to the case of Lachance, and that was just cited by Mr. Solemson, and this goes to the overall theme and the harmful error aspect of this case. This court wrote that when dealing with vague and general allegations of misconduct, such as the improper conduct that we have here before us today, Judge Bryson wrote, writing for the court, the board must look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action. In this case, the agency wants to charge Mr. Ward both with the most minimal violation of improper conduct, such as walking out of the room, and the most extreme, zero-tolerance policy. And when the most extreme aspect of the charge falters, they want to fall back and say, you violated improper conduct, that's sufficient. Unless there are any further questions. Thank you, Mr. Dowd. Thank you very much. Our next case is Manor Care v. The United States.